IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WELCH ALLYN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-224 (MN) |
| | ) | |
| IRHYTHM TECHNOLOGIES, INC., | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant. | ) | |

**DEFENDANT IRHYTHM TECHNOLOGIES, INC.'S ANSWER TO PLAINTIFF
WELCH ALLYN, INC.'S SECOND AMENDED COMPLAINT**

Defendant iRhythm Technologies, Inc. ("iRhythm"), by and through its undersigned counsel, hereby answers the Second Amended Complaint ("SAC") of Welch Allyn, Inc. ("Plaintiff" or "Welch Allyn") as follows:

I.    **ANSWER**

**Nature of the Action[1]**

1.    iRhythm admits that Welch Allyn purports to allege an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., including specifically 35 U.S.C. § 271.  iRhythm denies that Welch Allyn is entitled to the relief it seeks for any alleged infringement of U.S. Patent Nos. 8,214,007 (the "'007 patent"); 8,630,699 (the "'699 patent"); 8,750,974 (the "'974 patent"); 8,965,492 (the "'492 patent"); 9,155,484 (the "'484 patent"); and 10,159,422 (the "'422 patent") (collectively, the "Asserted Patents").  iRhythm denies any remaining allegations of paragraph 1 of the SAC.

---

[1]    To the extent that Welch Allyn intends the headings in its SAC to constitute allegations, iRhythm explicitly denies them.  The headings in iRhythm's answer are not responses to the headings in Welch Allyn's SAC.

2.      iRhythm admits that the '007, '699, '974, '492, '484, and '422 patents each list "Welch Allyn, Inc." as an assignee.  iRhythm lacks sufficient knowledge or information to form a belief as to the truth or falsity of any remaining allegations in paragraph 2 of the SAC and, on that basis, denies them.

**The Parties**

3.      iRhythm lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 3 of the SAC and, on that basis, denies them.

4.      iRhythm lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 4 of the SAC and, on that basis, denies them.

5.      iRhythm admits that it was incorporated in the State of Delaware on September 14, 2006.  iRhythm denies any remaining allegations in paragraph 5 of the SAC.

6.      iRhythm admits that it has executive offices located at 699 8th Street, Suite 600, San Francisco, California 94103.  iRhythm denies any remaining allegations of paragraph 6 of the SAC.

7.      iRhythm admits that the website https://investors.irhythmtech.com/resources/investor-faqs/default.aspx states that "iRhythm is a leading digital health care company that creates trusted solutions that detect, predict, and prevent disease. Combining wearable biosensors and cloud-based data analytics with powerful proprietary algorithms, iRhythm distills data from millions of heartbeats into clinically actionable information. Through a relentless focus on patient care, iRhythm's vision is to deliver better data, better insights, and better health for all."  iRhythm denies any remaining allegations of paragraph 7 of the SAC.

8.      iRhythm admits that iRhythm's 2023 Form 10-K, available at https://www.sec.gov/Archives/edgar/data/1388658/000138865824000014/irtc-20231231.htm, states that iRhythm "offer[s] remote cardiac monitoring technology" and also "function[s] as [a]

diagnostic service provider[].”  iRhythm denies any remaining allegations of paragraph 8 of the SAC.

9.    iRhythm admits that both iRhythm and Welch Allyn offer remote cardiac monitoring technology.  iRhythm further admits that Welch Allyn sells traditional, 24-to-48-hour Holter monitors.  iRhythm denies the remaining allegations of paragraph 9 of the SAC.

**Jurisdiction and Venue**

10.    iRhythm admits that Welch Allyn purports to allege a cause of action arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*, and that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.    iRhythm admits that it is incorporated in the State of Delaware.  For the purposes of this case only, iRhythm admits that this Court has personal jurisdiction over it.  iRhythm denies the remaining allegations of paragraph 11 of the SAC.

12.    iRhythm admits that it offers remote cardiac monitoring services that use the Zio AT monitor, the Zio XT monitor, and the Zio Next-Generation monitor.  iRhythm denies any remaining allegations of paragraph 12 of the SAC.

13.    iRhythm admits that the Zio AT monitor, Zio XT monitor, and Zio Next-Generation monitor are available to healthcare providers in Delaware.  iRhythm denies any remaining allegations of paragraph 13 of the SAC.

14.    The statements set forth in paragraph 14 constitute legal conclusions.  To the extent a response is required, iRhythm admits that it is incorporated in the State of Delaware, and that venue is proper in this judicial district under 28 U.S.C. § 1400(b).  iRhythm denies any remaining allegations of paragraph 14 of the SAC.

## Background

15.    iRhythm admits that U.S. Patent No. 1,166,287 lists "F. A. Welch" as an inventor. iRhythm denies that U.S. Patent No. 1,166,287 issued on December 18, 1915.  iRhythm lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 15 of the SAC and, on that basis, denies them.

16.    iRhythm lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 16 of the SAC and, on that basis, denies them.

17.    iRhythm admits that the '007 patent states that "[o]ne example of a portable patient monitor is the Micropaq wireless patient monitor, manufactured by Welch Allyn, Inc., that permits multi-parameter monitoring and patient alarm capabilities build in a small, rugged, lightweight, patient-wearable device."  iRhythm lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 17 of the SAC and, on that basis, denies them.

18.    iRhythm admits that Holter monitors have disadvantages, including having sensors that are connected to the portable unit by wires or leads.  iRhythm lacks knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations of paragraph 18 of the SAC and, on that basis, denies them.

19.    iRhythm lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 19 of the SAC and, on that basis, denies them.

20.    iRhythm lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 20 of the SAC and, on that basis, denies them.

21.    iRhythm lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 21 of the SAC and, on that basis, denies them.

22.    iRhythm lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 22 of the SAC and, on that basis, denies them.

23.    iRhythm denies that Bardy Diagnostics is a division of Welch Allyn.  iRhythm denies that Welch Allyn manufactures, markets, and sells the Bardy CAM Patch.  iRhythm lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 23 of the SAC and, on that basis, denies them.

### Patents-In-Suit

24.    iRhythm admits that the Micropaq and Holter monitors had several disadvantages. iRhythm admits that the '007 patent states that the "wires can become tangled and cause discomfort or become unplugged when inadvertently pulled or tugged on."  iRhythm admits that the '007 patent states that "wire motion can increase ECG noise due to the triboelectric effect."  iRhythm admits that the '007 patent states that "[m]uscle movement can also increase ECG noise, due to the typical placement of ECG electrodes over major muscles."  iRhythm denies any remaining allegations of paragraph 24 of the SAC.

25.    iRhythm admits that the '007 patent states that "portable battery maintenance (e.g. battery recharging or replacement) can be time consuming and costly."  iRhythm admits that the '007 patent states that "[a]nother problem is related to the requirement that a medical grade monitor survive multiple defibrillation cycles of at least 360 joules"; that "[c]onventionally, this requirement has been met by one or more power resistors situated in series with the wire leads of a fixed or portable physiological monitor" and that "[t]he problem is that the physical volume of conventional power resistors is too large for use in a compact monitor application."  iRhythm denies any remaining allegations of paragraph 25 of the SAC.

26.    iRhythm admits that the '007 patent states that "[w]hile transmitting the full patient waveform is the preferred solution from a purely clinical standpoint, such transmission requires

significant power to transmit large amounts of data and restricts the design from being small and inexpensive." iRhythm admits that the '007 patent states that "[y]et another problem is that arrhythmia analysis is a computationally intensive operation not well-suited to existing small portable monitors that presently have no ability to perform arrhythmia analysis." iRhythm denies any remaining allegations of paragraph 26 of the SAC.

27.    iRhythm admits that the '007 patent states that "there is a need for a body worn combined physiological sensor and monitor having a disposable sensor, but used and worn by a patient as a single unit directly and non-permanently affixed to a patient's body." iRhythm admits that the '007 patent states that "what is needed is a physically compact resistive element for protecting a body worn device from damage caused by multiple defibrillation cycles." iRhythm admits that the '007 patent states that "what is needed is a medical-grade monitor that can intelligently measure and transmit data only as required to alert clinicians that the patient needs additional attention." iRhythm admits that the '007 patent states that "[w]hat is also needed is a body-worn device capable of running arrhythmia analysis through computationally efficient algorithms." iRhythm denies any remaining allegations of paragraph 27 of the SAC.

28.    iRhythm admits that the '007 patent issued from U.S. Patent Application 11/591,619, which the face of the '007 patent identifies as being filed on November 1, 2006. iRhythm admits that the '492 patent, the '484 patent, the '699 patent, the '974 patent, and the '422 patent claim priority to U.S. Patent Application 11/591,619. iRhythm denies the remaining allegations of paragraph 28 of the SAC.

29.    iRhythm admits that the American Heart Association reports that atrial fibrillation is an irregular heartbeat or arrhythmia; that atrial fibrillation can lead to blood clots, stroke, heart failure, and other heart-related complications; and that "more than 12 million people are projected

6

to have AFib by 2030." *See* https://www.heart.org/en/health-topics/atrial-fibrillation/what-is-atrial-fibrillation-afib-or-af.  iRhythm denies any remaining allegations of paragraph 29 of the SAC.

30.    iRhythm admits the '007 patent lists "Jul. 3, 2012" as its issue date, "Body worn physiological sensor device having a disposable electrode module" as its title, and "Welch Allyn, Inc." as an assignee.  iRhythm further admits that Welch Allyn purports to attach a copy of the '007 patent as Exhibit 1 to the SAC.  iRhythm denies any remaining allegations of paragraph 30 of the SAC.

31.    iRhythm admits that the '492 patent lists "Feb. 24, 2015" as its issue date, "Body worn physiological sensor device having a disposable electrode module" as its title, and "Welch Allyn, Inc." as an assignee.  iRhythm further admits that Welch Allyn purports to attach a copy of the '492 patent as Exhibit 2 to the SAC.  iRhythm denies any remaining allegations of paragraph 31 of the SAC.

32.    iRhythm admits that the '484 patent lists "Oct. 13, 2015" as its issue date, "Body worn physiological sensor device having a disposable electrode module" as its title, and "Welch Allyn, Inc." as an assignee.  iRhythm further admits that Welch Allyn purports to attach a copy of the '484 patent as Exhibit 3 to the SAC.  iRhythm denies any remaining allegations of paragraph 32 of the SAC.

33.    iRhythm admits that the '422 patent lists "Dec. 25, 2018" as its issue date, "Body worn physiological sensor device having a disposable electrode module" as its title, and "Welch Allyn, Inc." as an assignee.  iRhythm further admits that Welch Allyn purports to attach a copy of the '422 patent as Exhibit 4 to the SAC.  iRhythm denies any remaining allegations of paragraph 33 of the SAC.

34.      iRhythm admits that the '699 patent lists "Jan. 14, 2014" as its issue date, "Body worn physiological sensor device having a disposable electrode module" as its title, and "Welch Allyn, Inc." as an assignee.  iRhythm further admits that Welch Allyn purports to attach a copy of the '699 patent as Exhibit 36 to the SAC.  iRhythm denies any remaining allegations of paragraph 34 of the SAC.

35.      iRhythm admits that the '974 patent lists "Jun. 10, 2014" as its issue date, "Body worn physiological sensor device having a disposable electrode module" as its title, and "Welch Allyn, Inc." as an assignee.  iRhythm further admits that Welch Allyn purports to attach a copy of the '974 patent as Exhibit 37 to the SAC.  iRhythm denies any remaining allegations of paragraph 35 of the SAC.

**Ambulatory Cardiac Monitoring Devices Market**

36.      iRhythm admits that paragraph 36 of the SAC includes a graphic from Exhibit 5 to the SAC, which purports to have the title "Ambulatory Cardiac Monitoring Devices Market Size, Share & Trends Analysis Report by Device Type (ECG Devices, Holter Monitors, Event Monitors), By End-Use, By Regions, And Segment Forecasts (2023-2030)."  iRhythm admits that the graphic in paragraph 36 of the SAC includes the categories ECG devices, Holter Monitors, Event Monitors, Implantable Loop Recorders, and Mobile Cardiac Telemetry.  iRhythm denies any remaining allegations of paragraph 36 of the SAC.

37.      iRhythm admits that Exhibit 5 to the SAC states that "[t]he ECG devices segment accounted for the largest market share of 38.9% in 2022" and that "[t]he demand for ECG devices is expected to grow due to the increasing incidences of cardiovascular disease & hypertension worldwide, coupled with the ease of access, continuous monitoring, and high accuracy capabilities of the device."  iRhythm further admits that Exhibit 5 to the SAC states that "[a]ccording to a study conducted by the WHO, 17.9 million people die every year due to cardiovascular diseases, which

accounts for 32% of the total deaths globally." iRhythm denies any remaining allegations of paragraph 37 of the SAC.

38.    iRhythm admits that Uday Kumar was a founder of iRhythm. iRhythm admits that it was incorporated in 2006. iRhythm admits that it manufactures and offers remote cardiac monitoring services that use the Zio AT monitor, Zio XT monitor, and Zio Next-Generation monitor. iRhythm denies any remaining allegations of paragraph 38 of the SAC.

39.    iRhythm admits that the website https://investors.irhythmtech.com/resources/investor-faqs/default.aspx states that "[c]ombining wearable biosensors and cloud-based data analytics with powerful proprietary algorithms, iRhythm distills data from millions of heartbeats into clinically actionable information." iRhythm denies any remaining allegations of paragraph 39 of the SAC.

## iRhythm's Zio AT Monitor

40.    iRhythm admits that paragraph 40 of the SAC purports to include a graphic from Exhibit 6 to the SAC, but the graphic in paragraph 40 of the SAC appears different from the graphic in Exhibit 6. iRhythm admits that paragraph 40 of the SAC purports to include two graphics from Exhibit 7 to the SAC. iRhythm admits that Exhibit 7 to the SAC states that "[t]he Zio AT system is a single-patient-use ECG monitor that provides a continuous, single-channel recording in addition to symptomatic and asymptomatic data transmission for up to 14 days." iRhythm admits that Exhibit 7 to the SAC states that "[i]f the Zio AT patch is over the heart in a slight diagonal as shown, the positioning should be acceptable." iRhythm denies any remaining allegations of paragraph 40 of the SAC.

41.    iRhythm admits that paragraph 41 of the SAC purports to include two graphics from Exhibit 7 to the SAC. iRhythm admits that Exhibit 7 to the SAC states "[o]nce activated, the patch records ECG without patient interaction, with the goal of improving patient compliance via

simplicity of operation" and that "[t]he wireless transfer of data is enabled by the Zio AT gateway." iRhythm admits that Exhibit 9 to the SAC states that "Zio AT Gateway, The Gateway device transfers cardiac monitoring data to/from a Bluetooth radio to/from a LTE Cat M1 radio, powered by a single LiPo battery for up to 14 days." iRhythm admits that Exhibit 7 to the SAC states that "[a]t the conclusion of the wear period (up to 14 days), the patient removes the Zio AT patch and returns it, along with the gateway, by mail to an iRhythm data processing center" and that "[u]pon receipt of symptomatic/asymptomatic transmissions or downloaded continuous ECG data at iRhythm's Clinical Center (iCC), the data is processed by iRhythm's proprietary algorithm before an iRhythm Certified Cardiographic Technician (CCT) reviews the results and generates a report." iRhythm denies any remaining allegations of paragraph 41 of the SAC.

42.        iRhythm admits that, on June 2, 2017, it received clearance under Section 510(k) of the Federal Food, Drug and Cosmetic Act for the Zio QX ECG Monitoring System, which was later called the Zio AT monitor. iRhythm denies any remaining allegations of paragraph 42 of the SAC.

**iRhythm's Zio XT Monitor**

43.        iRhythm admits that paragraph 43 of the SAC purports to include a graphic from Exhibit 6 to the SAC, but the graphic in paragraph 43 appears different from the graphic in Exhibit 6. iRhythm admits that Exhibit 11 of the SAC states the "Zio XT…is a novel, single-use, single-lead ECG monitor that can record up to 14 days of ECG data"; that the "device is a patch that adheres to the patient's left chest and monitors the electrical impulses of the heart, with ECG recordings stored internally within the device."; that "[a]fter the recording period, the device can be returned via mail to the company who process [sic] and analyse [sic] the ECG data"; and a "report is generated based on the recorded ECG data using a deep learning algorithm called

ZEUS…that can detect more than 13 types of cardiac arrhythmias." iRhythm denies any remaining allegations of paragraph 43 of the SAC.

44.     iRhythm admits that, on July 18, 2012, it received clearance under Section 510(k) of the Federal Food, Drug and Cosmetic Act for the Zio Patch, which was later re-branded and called the Zio XT monitor and that it had previously received FDA clearance for the Zio Patch, including on May 8, 2009 and February 6, 2012. iRhythm denies any remaining allegations of paragraph 44 of the SAC.

**iRhythm's Next-Generation Zio Monitor**

45.     iRhythm admits that paragraph 45 of the SAC purports to include a graphic from Exhibit 6 to the SAC, but the graphic in paragraph 45 appears different from the graphic in Exhibit 6. iRhythm admits that Exhibit 15, an article written by Amanda Pedersen, states that "iRhythm Technologies recently launched its next-generation Zio monitor and enhanced Zio long-term continuous monitoring service in the United States. The San Francisco, CA-based company touts an improved form factor with the new wearable heart monitoring device, which is 23% thinner, 62% lighter, and 72% smaller compared to previous generations of the technology." iRhythm admits that Exhibit 15 of the SAC is a third-party article that attributes the following quote to Mark Day: "So, miniaturization was focused on very clever ways of handling some of the larger components, which for example involved moving some of the big resistors that are required on the device to the more flexible part of the patch instead of on the actual printed circuit board in the housing." iRhythm denies any remaining allegations of paragraph 45 of the SAC.

46.     iRhythm admits that it received clearance under Section 510(k) of the Federal Food, Drug and Cosmetic Act for the Zio Next Generation monitor on May 21, 2021. iRhythm denies any remaining allegations of paragraph 46 of the SAC.

47.    iRhythm admits that healthcare providers can prescribe the Zio AT, Zio XT, and Zio Next-Generation monitors.  iRhythm denies the remaining allegations of paragraph 47 of the SAC.

48.    Whether a product is made in the United States is a legal conclusion, including under Federal Trade Commission regulations.  The allegation in this paragraph therefore states a legal conclusion to which no response is required.

### iRhythm's [Alleged] Knowledge of Welch Allyn's Patents-In-Suit

49.    iRhythm admits that iRhythm's 2017, 2018, 2019, 2020, and 2021 Annual Reports state that Welch Allyn is "in the ambulatory cardiac market," but unlike iRhythm's Zio Services, Welch Allyn "sell[s] standard Holter monitors" and/or "standard Holter monitor equipment." iRhythm admits that iRhythm's 2022 and 2023 Annual Reports state that Welch Allyn is in the "remote cardiac market," but unlike iRhythm's Zio Services, Welch Allyn "sell[s] standard Holter monitors" and/or "traditional, 24-to-48-hour Holter monitors."   iRhythm denies the remaining allegations of paragraph 49 of the SAC.

50.    iRhythm denies the allegations of paragraph 50 of the SAC.

51.    iRhythm admits that the'007 patent lists "Jul. 3, 2012" as its issue date.  iRhythm admits that the '007 patent issued from U.S. Patent Application 11/591,619, which published as U.S. Patent Publication No. 2008/0139953 on June 12, 2008.  To the extent paragraph 49 alleges iRhythm's knowledge of any of the Asserted Patents or knowledge of infringement of any of the Asserted Patents, the Court has already rejected any such allegations.  *See* Transcript from January 27, 2025 Hearing and Minute Entry dated January 28, 2025.  iRhythm denies any remaining allegations of paragraph 51 of the SAC.

52.    iRhythm denies the allegations of paragraph 52 of the SAC.

53.     iRhythm admits that it filed U.S. Patent Application No. 13/106,750 on May 12, 2011 and that Uday Kumar was listed as one of the inventors for this patent application. To the extent paragraph 53 alleges iRhythm's knowledge of any of the Asserted Patents or knowledge of infringement of any of the Asserted Patents, the Court has already rejected any such allegations.  *See* Transcript from January 27, 2025 Hearing and Minute Entry dated January 28, 2025.  iRhythm denies any remaining allegations of paragraph 53 of the SAC.

54.     iRhythm admits that an Office Action for U.S. Patent Application No. 13/106,750 issued on October 2, 2012 and that the Office Action included a rejection of then-pending claims 1-6, 20, 22, 26-29, 31-33 and 38-41 as allegedly anticipated by U.S. Patent Publication 2008/0139953.  To the extent paragraph 54 alleges iRhythm's knowledge of any of the Asserted Patents or knowledge of infringement of any of the Asserted Patents, the Court has already rejected any such allegations.  *See* Transcript from January 27, 2025 Hearing and Minute Entry dated January 28, 2025.  iRhythm denies any remaining allegations of paragraph 54 of the SAC.

55.     iRhythm admits that it filed a response to an Office Action for U.S. Patent Application 13/106,750 on October 29, 2012 that amended some of the pending claims, canceled at least one pending claim, and added new claims.  iRhythm admits that this response to the Office Action explained why the pending claims were not anticipated by U.S. Patent Publication 2008/0139953.  To the extent paragraph 55 alleges iRhythm's knowledge of any of the Asserted Patents or knowledge of infringement of any of the Asserted Patents, the Court has already rejected any such allegations.  *See* Transcript from January 27, 2025 Hearing and Minute Entry dated January 28, 2025.  iRhythm denies any remaining allegations of paragraph 55 of the SAC.

56.     iRhythm admits that an Office Action for U.S. Patent Application No. 13/106,750 issued on December 28, 2012 and that the Office Action included a rejection of then-pending

claims 1-6, 11, 20, 22, 26-29, 31-33 and 38-41 as allegedly obvious over U.S. Patent Publication 2008/0139953. To the extent paragraph 56 alleges iRhythm's knowledge of any of the Asserted Patents or knowledge of infringement of any of the Asserted Patents, the Court has already rejected any such allegations. *See* Transcript from January 27, 2025 Hearing and Minute Entry dated January 28, 2025. iRhythm denies any remaining allegations of paragraph 56 of the SAC.

57.    iRhythm admits that it filed a response to an Office Action for U.S. Patent Application 13/106,750 on May 28, 2013 that explained why the pending claims were patentable over U.S. Patent Publication 2008/0139953. To the extent paragraph 57 alleges iRhythm's knowledge of any of the Asserted Patents or knowledge of infringement of any of the Asserted Patents, the Court has already rejected any such allegations. *See* Transcript from January 27, 2025 Hearing and Minute Entry dated January 28, 2025. iRhythm denies the remaining allegations of paragraph 57 of the SAC.

58.    iRhythm admits that the claims of U.S. Patent Application 13/106,750 issued as U.S. Patent 8,560,046. iRhythm further admits that U.S. Patent Publication 2008/0139953 is listed under the "References Cited" heading for U.S. Patent 8,538,503. To the extent paragraph 58 alleges iRhythm's knowledge of any of the Asserted Patents or knowledge of infringement of any of the Asserted Patents, the Court has already rejected any such allegations. *See* Transcript from January 27, 2025 Hearing and Minute Entry dated January 28, 2025. iRhythm denies any remaining allegations of paragraph 58 of the SAC.

59.    To the extent paragraph 59 alleges iRhythm's knowledge of any of the Asserted Patents or knowledge of infringement of any of the Asserted Patents, the Court has already rejected any such allegations. *See* Transcript from January 27, 2025 Hearing and Minute Entry dated January 28, 2025. iRhythm denies any remaining allegations of paragraph 59 of the SAC.

60.    iRhythm admits that the website https://www.irhythmtech.com/us/en/patents-trademarks provides a virtual patent marking webpage that, as of March 17, 2025, lists 36 issued U.S. design or utility patents.  To the extent paragraph 60 alleges iRhythm's knowledge of any of the Asserted Patents or knowledge of infringement of any of the Asserted Patents, the Court has already rejected any such allegations.  *See* Transcript from January 27, 2025 Hearing and Minute Entry dated January 28, 2025.  iRhythm denies the remaining allegations of paragraph 60 of the SAC.

61.    iRhythm denies the allegations of paragraph 61 of the SAC.  *See also* Transcript from January 27, 2025 Hearing and Minute Entry dated January 28, 2025.

<u>**COUNT I**</u>
**[Alleged] Patent Infringement of U.S. Patent No. 8,214,007]**

62.    iRhythm incorporates by reference its responses to paragraphs 1 through 61 as if fully set forth herein.

63.    iRhythm denies that it has directly infringed any claim of the '007 patent, either literally or under the doctrine of equivalents.  iRhythm denies any remaining allegations of paragraph 63 of the SAC.

64.    iRhythm denies the allegations of paragraph 64 of the SAC.

65.    iRhythm denies the allegations of paragraph 65 of the SAC.

<u>**COUNT II**</u>
**[Alleged] Patent Infringement of U. S. Patent No. 8,965,492]**

66.    iRhythm incorporates by reference its responses to paragraphs 1 through 65 as if fully set forth herein.

67.    iRhythm denies that it has directly infringed any claim of the '492 patent, either literally or under the doctrine of equivalents.  iRhythm denies any remaining allegations of paragraph 67 of the SAC.

68.     iRhythm denies the allegations of paragraph 68 of the SAC.

69.     iRhythm denies the allegations of paragraph 69 of the SAC.

## COUNT III
### [Alleged] Patent Infringement of U.S. Patent No. 9,155,484]

70.     iRhythm incorporates by reference its responses to paragraphs 1 through 69 as if fully set forth herein.

71.     iRhythm denies that it has directly infringed any claim of the '484 patent, either literally or under the doctrine of equivalents.   iRhythm denies any remaining allegations of paragraph 71 of the SAC.

72.     iRhythm denies the allegations of paragraph 72 of the SAC.

73.     iRhythm denies the allegations of paragraph 73 of the SAC.

## COUNT IV
### [Alleged] Patent Infringement of U.S. Patent No. 10,159,422]

74.     iRhythm incorporates by reference its responses to paragraphs 1 through 73 as if fully set forth herein.

75.     iRhythm admits that Welch Allyn purports to bring an action arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq* and 35 U.S.C. § 271.  iRhythm denies any remaining allegations of paragraph 75 of the SAC.

76.     iRhythm denies that it has directly infringed any claim of the '422 patent, either literally or under the doctrine of equivalents.   iRhythm denies any remaining allegations of paragraph 76 of the SAC.

77.     iRhythm denies the allegations of paragraph 77 of the SAC.

78.     iRhythm denies the allegations of paragraph 78 of the SAC.

79.     iRhythm denies the allegations of paragraph 79 of the SAC.

## COUNT V
### [Alleged] Patent Infringement of U.S. Patent No. 8,630,699]

80.    iRhythm incorporates by reference its responses to paragraphs 1 through 79 as if fully set forth herein.

81.    iRhythm admits that Welch Allyn purports to bring an action arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq* and 35 U.S.C. § 271.  iRhythm denies any remaining allegations of paragraph 81 of the SAC.

82.    iRhythm denies that it has directly infringed any claim of the '699 patent, either literally or under the doctrine of equivalents.  iRhythm denies any remaining allegations of paragraph 82 of the SAC.

83.    iRhythm denies the allegations of paragraph 83 of the SAC.

84.    iRhythm denies the allegations of paragraph 84 of the SAC.

## COUNT VI
### [Alleged] Patent Infringement of U.S. Patent No. 8,750,974]

85.    iRhythm incorporates by reference its responses to paragraphs 1 through 84 as if fully set forth herein.

86.    iRhythm admits that Welch Allyn purports to bring an action arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq* and 35 U.S.C. § 271.  iRhythm denies any remaining allegations of paragraph 86 of the SAC.

87.    iRhythm denies that it has directly infringed any claim of the '974 patent, either literally or under the doctrine of equivalents.  iRhythm denies any remaining allegations of paragraph 87 of the SAC.

88.    iRhythm denies the allegations of paragraph 88 of the SAC.

89.    iRhythm denies the allegations of paragraph 89 of the SAC.

90.    iRhythm denies the allegations of paragraph 90 of the SAC.

## RELIEF REQUESTED

iRhythm denies that Welch Allyn is entitled to any of the relief requested in the SAC or any relief whatsoever.  iRhythm denies all allegations in the SAC that have not been specifically admitted in paragraphs 1–90 above.

## II.    DEFENSES, AFFIRMATIVE OR OTHERWISE

iRhythm asserts the following additional defenses to the SAC.  In doing so, iRhythm does not assume any burden of proof on any issue that is Welch Allyn's burden as a matter of law. iRhythm also reserves the right to amend or supplement these defenses as additional facts become known.

### FIRST DEFENSE: FAILURE TO STATE A CLAIM

The SAC fails to allege facts sufficient to state a cause of action upon which relief may be granted.

### SECOND DEFENSE: NON-INFRINGEMENT ('007 PATENT)

iRhythm has not infringed, and currently does not infringe, any valid claim of the '007 patent, either literally or under the doctrine of equivalents.

### THIRD DEFENSE: NON-INFRINGEMENT ('492 PATENT)

iRhythm has not infringed, and currently does not infringe, any valid claim of the '492 patent, either literally or under the doctrine of equivalents.

### FOURTH DEFENSE: NON-INFRINGEMENT ('484 PATENT)

iRhythm has not infringed, and currently does not infringe, any valid claim of the '484 patent, either literally or under the doctrine of equivalents.

### FIFTH DEFENSE: NON-INFRINGEMENT ('422 PATENT)

iRhythm has not infringed, and currently does not infringe, any valid claim of the '422 patent, either literally or under the doctrine of equivalents.

## SIXTH DEFENSE: NON-INFRINGEMENT ('699 PATENT)

iRhythm has not infringed, and currently does not infringe, any valid claim of the '699 patent, either literally or under the doctrine of equivalents.

## SEVENTH DEFENSE: NON-INFRINGEMENT ('974 PATENT)

iRhythm has not infringed, and currently does not infringe, any valid claim of the '974 patent, either literally or under the doctrine of equivalents.

## EIGHTH DEFENSE: INVALIDITY ('007 PATENT)

Any asserted claim of the '007 patent is invalid for failure to comply with one or more conditions and requirements of the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

## NINTH DEFENSE: INVALIDITY ('492 PATENT)

Any asserted claim of the '492 patent is invalid for failure to comply with one or more conditions and requirements of the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

## TENTH DEFENSE: INVALIDITY ('484 PATENT)

Any asserted claim of the '484 patent is invalid for failure to comply with one or more conditions and requirements of the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

## ELEVENTH DEFENSE: INVALIDITY ('422 PATENT)

Any asserted claim of the '422 patent is invalid for failure to comply with one or more conditions and requirements of the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

## TWELFTH DEFENSE: INVALIDITY ('699 PATENT)

Any asserted claim of the '699 patent is invalid for failure to comply with one or more conditions and requirements of the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

## THIRTEENTH DEFENSE: INVALIDITY ('974 PATENT)

Any asserted claim of the '974 patent is invalid for failure to comply with one or more conditions and requirements of the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

## FOURTEENTH DEFENSE: GOOD FAITH

iRhythm has engaged in all relevant activities in good faith, thereby precluding Welch Allyn, even if it prevails, from recovering its reasonable attorneys' fees or costs under 35 U.S.C. § 285.

## FIFTEENTH DEFENSE: DEDICATION TO THE PUBLIC

The relief sought by Welch Allyn is barred, in whole or in part, because Welch Allyn dedicated to the public all methods, systems, and products disclosed in the asserted patents but not literally claimed therein.

## SIXTEENTH DEFENSE: ESTOPPEL

The relief sought by Welch Allyn is barred, in whole or in part, under the doctrine of prosecution history estoppel due to amendments and/or statements made during prosecution of the asserted patents.

## SEVENTEENTH DEFENSE: LIMITATIONS ON DAMAGES AND COSTS

Welch Allyn's claim for damages is barred, in whole or in part, by 35 U.S.C. §§ 286 or 287.  To the extent any claim of asserted patents is invalid, Welch Allyn is barred from recovering costs by 35 U.S.C. § 288.

## EIGHTEENTH DEFENSE:  NO EXCEPTIONAL CASE FOR PLAINTIFF

iRhythm has not engaged in any conduct that would make this an exceptional case that would entitle Welch Allyn to an award of attorneys' fees or enhanced damages.

## RESERVATION OF ADDITIONAL DEFENSES

iRhythm reserves the right to assert additional defenses in the event that discovery or other analysis indicates that additional defenses are appropriate.

## JURY DEMAND

iRhythm respectfully requests a trial by jury in this action for all issues triable by a jury.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Lucinda C. Cucuzzella*

_____

OF COUNSEL:

J. David Hadden
Allen Wang
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
(650) 988-8500

Melanie L. Mayer
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, WA  98101
(206) 389- 4510

Robert Edward Counihan
FENWICK & WEST LLP
902 Broadway, 18th Floor
New York, NY  10010
(212) 430- 2600

March 21, 2025

Brian P. Egan (#6227)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
ccucuzzella@morrisnichols.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2025, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused to be served copies of the foregoing document on March 21, 2025, upon the following in the manner indicated:

Philip A. Rovner, Esquire                                    *VIA ELECTRONIC MAIL*
POTTER ANDERSON & CORROON LLP
P.O. Box 951
Wilmington, DE  19899
*Attorneys for Plaintiff*

Jeffrey R. Gargano, Esquire                                *VIA ELECTRONIC MAIL*
Devon C. Beane, Esquire
Melissa M. Haulcomb, Esquire
Rebekah Hill, Esquire
K& L GATES LLP
70 West Madison Street, Suite 3300
Chicago, IL  60602
*Attorneys for Plaintiff*

Erik J. Halverson, Esquire                                 *VIA ELECTRONIC MAIL*
K& L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, CA  94111
*Attorneys for Plaintiff*

/s/ Lucinda C. Cucuzzella
_____
Lucinda C. Cucuzzella (#3491)