13:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


WELCH ALLYN, INC.,            )
                             )
          Plaintiff,         )
                             ) C.A. No. 24-224(MN)
v.                           )
                             )
IRHYTHM TECHNOLOGIES, INC.,)
                             )
          Defendant.         )


                    Tuesday, January 28, 2025
                    10:00 a.m.
                    Teleconference


                    844 King Street
                    Wilmington, Delaware


BEFORE:   THE HONORABLE MARYELLEN NOREIKA
          United States District Court Judge


APPEARANCES:


          POTTER ANDERSON & CORROON, LLP
          BY:  PHILIP A. ROVNER, ESQ.

          -and-

          K&L GATES
          BY:  DEVON C. BEANE, ESQ.
          BY:  REBEKAH HILL, ESQ.


                    Counsel for the Plaintiffs

1    APPEARANCES CONTINUED:

2

3            MORRIS NICHOLS ARSHT & TUNNELL LLP
             BY:  BRIAN P. EGAN, ESQ.
             BY:  LUCINDA C. CUCUZZELLA, ESQ.
4
             -and-
5
             FENWICK & WEST
6            BY:  MELANIE M. MAYER, ESQ.

7
                    Counsel for the Defendant
8

9

10                  _ _ _ _ _ _ _ _ _ _ _ _

11

12

10:02:11 13            THE COURT:  Good morning, counsel.  Who is

10:02:13 14    there, please?

10:02:14 15            MR. ROVNER:  Good morning, Your Honor.  This is

10:02:21 16    Phil Rovner.  It's hard to hear you, I'm sorry.

10:02:24 17            THE COURT:  Okay.  Are you with anybody?

10:02:26 18            MR. ROVNER:  Yes, now I hear you.  This is Phil

10:02:29 19    Rovner from Potter Anderson on behalf of the plaintiff,

10:02:33 20    Welch Allyn.  With me is my co-counsel, Devon Beane and

10:02:39 21    Rebekah Hill.  And with Your Honor's permission, Mr. Beane

10:02:41 22    will be presenting argument on Welch's behalf.

10:02:44 23            THE COURT:  Good morning.

10:02:45 24            MR. EGAN:  Good morning, Your Honor.  This is

10:02:47 25    Brian Egan from Morris Nichols on behalf of iRhythm.

10:02:50  1    Joining me this morning is my colleague, Lucinda Cucuzzella.

10:02:54  2    Also joining are Melanie Mayer from Fenwick & West and our

10:02:59  3    client representative, Ted Lopez, who is Director of

10:03:03  4    Intellectual Property at iRhythm.

10:03:04  5             THE COURT:  All right.  Good morning to all of

10:03:05  6    you as well.

10:03:06  7             So I have before me the partial Motion to

10:03:14  8    Dismiss.  And it's to dismiss the counts of willful

10:03:22  9    infringement -- not counts, I guess it's the allegations, I

10:03:28 10    don't think it's actually a cause of action.  But you want

10:03:31 11    to get rid of the allegations of willful infringement in the

10:03:35 12    First Amended Complaint.

10:03:37 13             And I'll give you an opportunity to make your

10:03:41 14    argument.  What I'm trying to figure out is as an initial

10:03:45 15    matter, is this like to dismiss those allegations -- the

10:03:52 16    willfulness from the case completely or to dismiss it in the

10:04:00 17    time after the first complaint, because unlike some of the

10:04:05 18    judges here, I have been known to allow an original

10:04:09 19    complaint to serve as a basis for asserting knowledge of the

10:04:15 20    patent and knowledge of infringement for later willfulness.

10:04:18 21             So before we get into your arguments, what is it

10:04:23 22    that you want?  Are you saying that that complaint wasn't

10:04:27 23    sufficient, or are you saying so that everything is gone or

10:04:32 24    are you saying -- are you looking for the time from when the

10:04:37 25    patents issued to the filing of the original complaint?

10:04:42 1          MS. MAYER:  Yes, Your Honor.  This is Melanie

10:04:44 2  Mayer of Fenwick & West on behalf of iRhythm.  And what

10:04:47 3  we're requesting is that the entire willful infringement

10:04:53 4  claim be dismissed.  That includes both pre-filing of the

10:04:56 5  original complaint and post-filing of the original

10:05:00 6  complaint.

10:05:00 7          THE COURT:  Okay.  So that's helpful.  Thank

10:05:02 8  you.  So what I would like you to do when you're making your

10:05:06 9  argument is I think I understand pretty well your argument

10:05:11 10  pre-filing, but I'll let you talk about that.  Then I need

10:05:15 11  you to help me understand why without just saying oh, that's

10:05:22 12  what Judge Connolly does or that's what Judge Andrews does,

10:05:26 13  help me understand why I should also dismiss the willfulness

10:05:31 14  from the case post-filing.

10:05:35 15          MS. MAYER:  Okay, Your Honor, I understand.

10:05:37 16          Would you like me to proceed with argument, Your

10:05:41 17  Honor?

10:05:41 18          THE COURT:  Yes, please.

10:05:43 19          MS. MAYER:  Okay.  And you indicated that each

10:05:46 20  side would get fifteen minutes.  May I reserve five minutes

10:05:50 21  to respond to Plaintiff's argument?

10:05:52 22          THE COURT:  Sure.

10:05:53 23          MS. MAYER:  Okay.  Well, good morning, Your

10:05:57 24  Honor.  This again is Melanie Mayer of Fenwick & West on

10:06:02 25  behalf of iRhythm.

10:06:03 1          As you know, wilful infringement is the rare

10:06:06 2   exception, not the rule.  It accuses conduct that the

10:06:09 3   Supreme Court told us in *Halo* is malicious, flagrant, or

10:06:15 4   characteristic of a pirate.

10:06:17 5          THE COURT:  Hold on, that standard is really --

10:06:20 6   I mean, to adequately plead wilful infringement, you need to

10:06:24 7   plead knowledge of the patent and knowledge of infringement.

10:06:26 8   All that like a pirate stuff comes in later, in determining,

10:06:33 9   and that would be for me to determine whether or not

10:06:35 10  enhanced damages or anything else comes into play.

10:06:39 11         MS. MAYER:  I understand, Your Honor.

10:06:40 12         THE COURT:  You don't need to tell me and waste

10:06:43 13  your time, your limited time with that kind of thing.  Stick

10:06:48 14  with knowledge of the patent, knowledge of infringement, and

10:06:51 15  you can start with the pre-filing, but as I said, I need to

10:06:56 16  hear from you post-filing as well.

10:06:58 17         MS. MAYER:  Okay.  So the four asserted patents,

10:07:04 18  I'll start with knowledge of the patent.  There are four

10:07:06 19  asserted patents in this case.  The first three of those

10:07:08 20  patents, the '422, the '484, and the '492 patent, there are

10:07:15 21  no allegations in the operative complaint, which is the

10:07:19 22  First Amended Complaint, that these patents were ever

10:07:23 23  identified to iRhythm.  The Plaintiff points to allegations

10:07:26 24  that a different patent, the '007 patent, was included in

10:07:31 25  IDS, but this cannot possible give iRhythm knowledge of

10:07:37 1   different claims in three different patents or infringement

10:07:40 2   of those three different patents.

10:07:42 3        The fact itself shows how implausible these

10:07:47 4   allegations are.  It alleges that iRhythm had knowledge of

10:07:51 5   the '484 and '422 patents since at least October 6, 2015,

10:07:58 6   when the '007 patent was cited in an IDS, but those two

10:08:04 7   patents had not even issued at that time.  So that

10:08:07 8   allegation is impossible.

10:08:09 9        There is no case that Welch Allyn cited for the

10:08:16 10  position that iRhythm could possibly have knowledge of the

10:08:20 11  '422, '484, or '492 patents based on a different patent, the

10:08:27 12  '007 patent being included in an IDS.  The Plaintiff also

10:08:32 13  points to one sentence in paragraph 48 of the First Amended

10:08:38 14  Complaint that says upon information and belief, iRhythm

10:08:41 15  monitors products and patent filings of its competitors,

10:08:46 16  including Welch Allyn.

10:08:48 17       But the *Malvern*, *VLSI Technology*, and *Finjan*

10:08:55 18  cases cited in the briefing all explain that this type of

10:08:57 19  conclusory allegation about monitoring competitors' patents

10:09:01 20  is not sufficient to allege knowledge of any particular

10:09:05 21  patent for wilful infringement.

10:09:07 22       Plaintiff cites no case that supports its

10:09:12 23  position that this type of conclusory allegation can show

10:09:17 24  knowledge of a particular patent, much less infringement of

10:09:21 25  that patent.  In the briefing for the motion, Plaintiff

10:09:26  1    points to Exhibit A of its opposition brief which it says

10:09:31  2    shows that a founder of iRhythm, Mr. Kumar, said he

10:09:35  3    monitored patent filings generally in 2010, but Exhibit A is

10:09:40  4    not part of the facts, the First Amended Complaint, so it's

10:09:44  5    simply not relevant to the Motion to Dismiss.  And Plaintiff

10:09:48  6    can't add new allegations in the briefing.

10:09:51  7          Also, this article is from 2010, and Mr. Kumar

10:09:56  8    left iRhythm in June of 2011, years before the four asserted

10:10:01  9    patents in this case issued.  So as explained in the

10:10:05  10   *Monolithic Power Systems* case cited in iRhythm's reply

10:10:10  11   brief, an allegation that a company had knowledge of a

10:10:12  12   patent from an employee that left the company before the

10:10:16  13   patent even issued is simply implausible.

10:10:19  14         Turning to the last patent, the '007 patent, the

10:10:24  15   Plaintiff points to allegations about the Baker '953

10:10:30  16   publication which is a published patent application.  But a

10:10:34  17   patent application cannot give knowledge of a later issued

10:10:38  18   patent, the claims of that issued patent, or knowledge of

10:10:43  19   infringement.

10:10:45  20         The *iFIT*, *Helios* and *Kaufman* cases all hold that

10:10:51  21   a patent application cannot establish knowledge of a patent

10:10:54  22   or knowledge of infringement, including because the claims

10:10:58  23   are different.  And Plaintiff doesn't cite any case that

10:11:02  24   finds a patent application provides knowledge of a later

10:11:06  25   issued patent.

10:11:07  1          So what is left is the allegation that iRhythm's

10:11:11  2  counsel listed the '007 patent in IDS along with hundreds of

10:11:17  3  other references, at least five cases from this district

10:11:22  4  hold that citing a patent in an IDS is not legally

10:11:26  5  sufficient to establish knowledge of a patent for wilful

10:11:30  6  infringement.  And those cases are *Princeton Digital,*

10:11:35  7  *Callwave Communications, Chalumeau Power Systems,*

10:11:40  8  *DermaFocus,* and *Spherix.*

10:11:41  9          The Plaintiff in the briefing did point to one

10:11:45 10  case, the *Intellectual Ventures* case where the Defendant and

10:11:50 11  a quote from that case is brought the asserted patent to the

10:11:54 12  attention of the examiner and "referenced it as prior art."

10:11:58 13  But those facts are not alleged here.  The '007 patent was

10:12:03 14  just listed in IDS's like in *DermaFocus* and *Callwave.*  And

10:12:09 15  it makes no sense that a party would be deemed to know all

10:12:12 16  claims of every patent that's ever been cited in an IDS for

10:12:17 17  all of its patent applications.

10:12:19 18          The facts also fail to allege knowing or

10:12:26 19  deliberate infringement for each of the four asserted

10:12:29 20  patents.  There is a single conclusory sentence that

10:12:34 21  iRhythm's infringement has been "deliberate, willful, and

10:12:40 22  wanton and with full knowledge or in the alternative willful

10:12:44 23  blindness."  But this just lists the elements of a wilful

10:12:48 24  infringement claim without the specific factual allegations

10:12:51 25  required by *Iqbal* and *Twombly*.

10:12:54 1          The *Boston Scientific* case that's cited in the

10:12:58 2   briefing holds that such a conclusory allegation of

10:13:03 3   infringement is not sufficient.

10:13:05 4          And Plaintiff points to the *Xpoint Technology*

10:13:09 5   case, but that case doesn't help it, and in fact similarly,

10:13:14 6   to the *Boston Scientific* case, holds that a conclusory

10:13:18 7   allegation --

10:13:19 8          THE COURT:  All right.  You're creeping up on

10:13:21 9   nine minutes here.  Why don't you get to the post-filing

10:13:24 10  because I get it, and you're just kind of reciting what's in

10:13:29 11  the briefs, so help me out with the post-filing.

10:13:32 12         MS. MAYER:  Sure.  So for the post-filing, the

10:13:36 13  first point is that while in the briefing the Plaintiff says

10:13:41 14  that the complaint provided knowledge, that's not an

10:13:45 15  allegation in the First Amended Complaint.  So nowhere in

10:13:48 16  the First Amended Complaint is there an allegation that

10:13:52 17  iRhythm received knowledge from the original complaint.

10:13:57 18         The second point is that, and while there is

10:14:02 19  different approaches in the district, allowing the original

10:14:05 20  complaint to serve as a basis or the knowledge required for

10:14:09 21  wilful infringement would mean that every case is a wilful

10:14:14 22  infringement case.

10:14:14 23         THE COURT:  Yeah, but so what?  I mean, I get

10:14:17 24  it.  And I know that some of the judges in this district

10:14:21 25  haven't allowed it, but what's the difference between the

10:14:24 1  **day they filed the original complaint, they sent you a**

10:14:27 2  **letter or they sent you a draft complaint and they said hey,**

10:14:31 3  **you might infringe or if they filed a complaint, like, what**

10:14:35 4  **is the difference?**

10:14:36 5  **MS. MAYER:  It comes down to whether we're going**

10:14:41 6  **to encourage parties to try to resolve issues outside of**

10:14:45 7  **litigation or if we can just file a complaint and**

10:14:49 8  **immediately file an amended complaint within the period**

10:14:52 9  **where you don't need leave to amend --**

10:14:55 10  **THE COURT:  But people are allowed to do that,**

10:14:57 11  **right?**

10:14:58 12  **MS. MAYER:  You can file, yes, you can of course**

10:15:02 13  **under the --**

10:15:03 14  **THE COURT:  I mean, am I supposed to police when**

10:15:07 15  **you -- oh, you know, the rules give people time when they**

10:15:13 16  **can file an amended complaint as a right, do I have to go**

10:15:17 17  **through now and say well, you could do it as a right, but I**

10:15:20 18  **really want to discourage that because I don't like the**

10:15:24 19  **reason that you give it?**

10:15:28 20  **MS. MAYER:  Well, it would encourage parties to**

10:15:31 21  **give notice before filing suit, and allow that ---**

10:15:37 22  **THE COURT:  When is notice enough?  You have to**

10:15:40 23  **have like an hour's notice, a day's notice, a week notice, a**

10:15:45 24  **month's notice?**

10:15:49 25  **MS. MAYER:  I mean, there is no answer to that,**

10:15:52  1  but it had to be before filing the complaint, and so you at

10:15:56  2  least get some opportunity to assess infringement and have a

10:16:01  3  conversation.

10:16:01  4           THE COURT:  All right.  Let me hear from the

10:16:03  5  Plaintiff.

10:16:06  6           MS. BEANE:  Thank you, Your Honor.  This is

10:16:08  7  Devon Beane on behalf of Welch Allyn.

10:16:11  8           Turning just to the last point that you were

10:16:13  9  discussing on post-filing wilful infringement, there is no

10:16:16  10  dispute that the first complaint filed last year in February

10:16:20  11  provided iRhythm notice of the --

10:16:23  12           THE COURT:  Did you rely on that in your --

10:16:27  13  where in your First Amended Complaint do you?

10:16:32  14           MS. BEANE:  We do not rely on that, Your Honor,

10:16:34  15  for purposes of the wilful infringement allegation.

10:16:36  16           THE COURT:  All right.  So that's not all that

10:16:39  17  helpful to you, then.  Why don't we talk about the

10:16:42  18  pre-filing.

10:16:44  19           MS. BEANE:  Yes.  I want to start with the '007

10:16:49  20  patent.  In iRhythm's view, they take each allegation

10:16:53  21  individually instead of looking at them in the collective

10:16:56  22  and I think that's exactly what the *Malvern* court in 2021,

10:17:00  23  Westlaw 3856145, said was inappropriate.  They said that you

10:17:06  24  should really look at the totality of what is being alleged

10:17:09  25  here.  And we're not just alleging that the Baker

10:17:12  1   publication, which became the '007 patent, was cited in an

10:17:16  2   IDS among numerous other references, we've alleged that that

10:17:20  3   application was specifically discussed between the examiner

10:17:23  4   and iRhythm throughout the course of the prosecution of

10:17:26  5   iRhythm's patents.

10:17:28  6          And then after that discussion, the '007 started

10:17:33  7   to appear on the IDS that iRhythm was presenting throughout

10:17:38  8   the course of the rest of its portfolio in over thirty

10:17:42  9   patents.  So it's not just, you know, an application or the

10:17:46 10   '007 patent showing up in an IDS, it's the totality of the

10:17:50 11   discussions that iRhythm had about that application, and

10:17:53 12   then iRhythm's decision to apparently continue to monitor

10:17:58 13   that portfolio as the '007 issues then they start to prevent

10:18:04 14   that patent as well in their IDS statements.  So in terms of

10:18:08 15   the '007, in my mind, those collective actions and facts at

10:18:14 16   least establish a plausibility that iRhythm had notice of

10:18:18 17   the '007 patent in advance of this case.

10:18:22 18          Now, iRhythm says okay, but what about these

10:18:26 19   other patents, you haven't cited any case that says the

10:18:31 20   related patent can provide knowledge.

10:18:33 21          First we provide allegations that they have been

10:18:36 22   monitoring our portfolio.  And what I just said I think

10:18:40 23   supports that as well, which is they had knowledge of the

10:18:43 24   applications, and then the '007 issues and they start citing

10:18:47 25   it.  That is a fact that renders it plausible that iRhythm

10:18:51  1    was continuing to monitor this portfolio.

10:18:55  2            Now, there is also cases that say knowledge of

10:18:57  3    related patents is sufficient, and those are cited actually

10:19:02  4    in iRhythm's brief.  The first is the *Finjan* case, 2018

10:19:06  5    Westlaw 905909, where the Court explains that the facts in

10:19:10  6    that case were not as good as his decision in *Straight Path*

10:19:14  7    *IP v. Apple*, 2017 Westlaw 3967864 where Judge Alsup held

10:19:22  8    that the defendant's knowledge of 134 asserted patents was

10:19:25  9    sufficient to support a willfulness claim as to all patents

10:19:28 10    at the pleading stage.  Also, in the *DermaFocus* case cited

10:19:32 11    by iRhythm, that court is cites *Elm 3DS Innovations v.*

10:19:36 12    *Samsung*, a decision from Delaware, 2015 Westlaw 5725768

10:19:42 13    where the court found plausible pre-suit knowledge based on

10:19:45 14    a presentation of the defendant regarding related patents

10:19:48 15    and that the patents were known generally in the

10:19:52 16    semiconductor industry.  At the very least the combination

10:19:55 17    of the competitive intelligence allegations, the continual

10:19:59 18    monitoring of the portfolio as evidence by at least two

10:20:03 19    citations of the '007 after knowing about the publication,

10:20:07 20    and the additional court citations where related patent

10:20:11 21    knowledge is sufficient for the asserted patents, again,

10:20:16 22    renders it plausible that iRhythm has this knowledge of

10:20:19 23    these patents.

10:20:20 24            On the competitive intelligence point, first,

10:20:25 25    iRhythm says that the article or the textbook chapter that

10:20:31  1   we presented as Exhibit A in our opposition is not part of

10:20:34  2   the pleadings.  I agree with that.  But we are not trying to

10:20:38  3   supplement the allegations of the pleadings.  The point of

10:20:42  4   including that was that we had already begun to undertake

10:20:45  5   discovery in this case and we've already found additional

10:20:49  6   evidence that further supports the allegations that are

10:20:51  7   already in the complaint.

10:20:54  8          And the case that iRhythm cites to support the

10:20:58  9   -- that you can't supplement allegations in the complaint is

10:21:02 10   the Zimmerman versus --

10:21:05 11          THE COURT:  Let's just say you don't have to

10:21:08 12   distinguish that case because I agree with it, that you

10:21:10 13   can't just come in with your briefing and assert things that

10:21:13 14   aren't in your complaint, so you don't need to make that

10:21:16 15   argument to me.  You're not going to convince me on the

10:21:19 16   phone here today, so go to your next one, please.

10:21:22 17          MS. BEANE:  In terms of Mr. Kumar not being an

10:21:25 18   employee as of the time these patents were filed, iRhythm

10:21:29 19   cites the *Monolithic* case.  Mr. Kumar is not just a random

10:21:34 20   employee of iRhythm, he was the founder and CEO of the

10:21:38 21   company who, you know, presumably sets the tone for the

10:21:41 22   policies and procedures around IP, so whether or not he's

10:21:45 23   there or not I don't think undermines the plausibility that

10:21:48 24   iRhythm continued to monitor competitive IP as Mr. Kumar

10:21:54 25   stated in that article.

10:21:56  1          Now, in terms of -- no, I think that's it, Your

10:22:05  2   Honor, unless you have any questions.

10:22:06  3          THE COURT:  Nope.  That's it.  Thank you.  All

10:22:09  4   right.  Anything further?

10:22:11  5          MS. MAYER:  Your Honor, just a few brief points.

10:22:16  6   For the '422, the '484, and the '492 patent, there is

10:22:22  7   nothing that pointed iRhythm to those patents.  And counsel

10:22:26  8   just said that iRhythm, there is an allegation that iRhythm

10:22:33  9   monitors patent portfolios, but nothing -- there is no

10:22:38 10   allegation specifically to those patents.  And we already

10:22:41 11   talked about the case law that says a general allegation

10:22:44 12   that you monitor a patent portfolio doesn't get you to the

10:22:50 13   -- an allegation that is sufficient to show knowledge of

10:22:53 14   particular asserted patents.

10:22:55 15          And we talked for the '007, you know, counsel

10:23:00 16   pointed to, well, maybe the IDS's or the Baker publication

10:23:05 17   are not sufficient separately, but they are together.  And

10:23:10 18   you can't put two things together that are not legally

10:23:14 19   sufficient and then all of a sudden have something that

10:23:17 20   works.  So the Baker application has no claim.  And if you

10:23:24 21   discuss the Baker application, you don't get knowledge of

10:23:26 22   the later claims, you can't infringe a specification, and

10:23:31 23   simply listing an '007 patent in an IDS doesn't give you

10:23:36 24   knowledge, either.

10:23:38 25          So I'll stop there, Your Honor, unless you have

10:23:40 1    questions.

10:23:41 2              THE COURT:  All right.  Thank you.  Just give me

10:23:46 3    a moment.

10:23:59 4              (A brief recess was taken.)

10:24:40 5              THE COURT:  All right.  Thank you for the

10:24:42 6    arguments.  I have before me Defendant iRhythm Technologies'

10:24:46 7    Motion to Dismiss the willful infringement allegations in

10:24:51 8    Counts I, II, III and IV of the Amended Complaint.

10:24:56 9              IRhythm argues that Welch's wilful infringement

10:24:58 10   allegations should be dismissed for two reasons.  First,

10:25:05 11   iRhythm says that the Amended Complaint fails to adequately

10:25:08 12   allege pre-suit knowledge of the patents, and, second, that

10:25:10 13   it fails to allege knowledge of infringement.

10:25:15 14             I am going to grant the motion.  On a Motion to

10:25:20 15   Dismiss, I have to accept all well-pleaded factual

10:25:23 16   allegations in the complaint as true and viewed in the light

10:25:28 17   most favorable to the Plaintiff, but I need to dismiss any

10:25:31 18   claims that fail as a matter of law or do not contain

10:25:34 19   sufficient factual matter to state a claim for relief that

10:25:38 20   is plausible on its face.

10:25:40 21             As a matter of course, "[w]illful patent

10:25:44 22   infringement is the rare exception, not the rule."  To state

10:25:46 23   a claim for willful infringement, a Plaintiff must plausibly

10:25:48 24   allege that "the accused infringer knew of the

10:25:50 25   patents-in-suit, and knowingly or intentionally infringed

the patents after acquiring that knowledge."  The complaint
must allege "specific factual matter" demonstrating the
defendant's knowledge or intent, as well as deliberate steps
taken by the defendant.

The knowledge element can be satisfied by
"willful blindness," which requires that "(1) the defendant
must subjectively believe that there is a high probability
that a fact exists and (2) the defendant must take
deliberate actions to avoid learning of that fact."

Here, the Amended Complaint alleges that iRhythm
had knowledge of the Asserted Patents for four reasons:  (1)
during the prosecution of iRhythm's '503 patent in 2012 and
2013, the patent examiner rejected various claims as
anticipated by the Baker Application as prior art; (2)
during the prosecution of other of its patents, iRhythm
listed the '007 Patent and Baker Application in Information
Disclosure Statements; (3) during prosecution of iRhythm's
'670 patent in 2015, it "list[ed] at least one family
member" of the '422, '484, and '494 patents; and (4) iRhythm
monitors the products and patent filings of its competitors,
which was stated in a single sentence in one of the
paragraphs of the Amended Complaint.  None of these
allegations either alone or taken together suffice to
adequately allege that iRhythm knew of the Asserted Patents
for wilful infringement, or knew of infringement.

First, the allegations about the discussion of the Baker Application during iRhythm's 2012 prosecution of the '503 patent.  This one I suppose is a little bit of a close call, but the Federal Circuit has said that an application or "'patent pending' notice gives one no knowledge whatsoever," because "[f]iling an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents."

In addition, I agree the Judge Andrews in the *Alcatel-Lucent* case back in 2012 (2012 WL 6968938) that allegations that a "patent examiner" identified the asserted "patent as prior art" in a defendant's patent prosecution does not "make actual knowledge of the [asserted] patent's existence by [a] moving defendant[] plausible."  That is particularly true where, as here, "[t]he [asserted] patent was one of [many] references cited by the examiner during the prosecution of defendant's[] patent."

Next is the contention that the Complaint adequately alleges knowledge on the basis that the '007 patent is referenced or cited in approximately 30 of iRhythm's other patents and information disclosure statements.  Here again, "[t]he fact that the [asserted] patent was referenced during prosecution of [multiple] of defendant's [many] patents is not compelling evidence of knowledge."  Again, I agree with Judge Stark and Judge

10:28:58  1    Andrews in the *Princeton Digital* and *Callwave* cases that

10:29:01  2    allegations of "knowledge of one of the [asserted patents]

10:29:04  3    [by virtue of] citations to a patent in multiple Information

10:29:10  4    Disclosure Statements . . . is insufficient to support an

10:29:11  5    allegation of willfulness."  That is because "allegations

10:29:16  6    that a defendant cited or referenced a patent during

10:29:19  7    prosecution are generally not sufficient, alone, to support

10:29:23  8    an inference of pre-suit knowledge of that patent."  And

10:29:25  9    here, there are no additional allegations to support

10:29:28  10   knowledge, such as an "ongoing business relationship"

10:29:30  11   between the parties, or that any of iRhythm's employees had

10:29:34  12   specific knowledge of the Asserted Patents.

10:29:36  13            Next, Plaintiff alleges that iRhythm knew of the

10:29:41  14   '422, '484, and '492 patents from its October 2015

10:29:47  15   prosecution of its '670 patent, which allegedly listed "at

10:29:52  16   least one family member" of the patents.  These allegations

10:29:55  17   fail for a number of reasons.  First, as already explained,

10:29:59  18   the mere citation in a patent prosecution, by itself, is

10:30:03  19   insufficient to plausibly plead knowledge.  Second, the

10:30:06  20   allegations do not even state that iRhythm mentioned the

10:30:09  21   '422, '484, and '492 patents *themselves*, only "one family

10:30:13  22   member."

10:30:14  23            And, third, the allegations as to the '422 and

10:30:18  24   '484 patents are facially implausible, because they allege

10:30:22  25   that iRhythm knew of those patents before they were even

1    issued.

2    Accordingly, "[g]iven the implausible inferences

3    related to pre-suit knowledge, I will grant the Motion to

4    Dismiss as it relates to pre-suit willfulness.

5    Next, we have a pleading of knowledge of

6    infringement.  To state a claim for wilful infringement, a

7    Plaintiff must plead both knowledge of the patent and

8    knowledge of infringement.  Here, the only allegations in

9    the Complaint that iRhythm knew of infringement are

10   essentially conclusory - one for each of the Asserted

11   Patents - that "iRhythm's infringement ]has been deliberate,

12   willful and wanton, and with full knowledge."  "[M]erely

13   stat[ing] in each count that '[the defendant's] infringement

14   is reckless, knowing, deliberate, and willful' [constitutes

15   only] conclusory statements [that] are insufficient to plead

16   a cognizable claim."  Thus, these allegations "do not

17   support a plausible inference that [the defendant] knew it

18   infringed the [asserted] patents."

19   Plaintiff also suggests that its two allegations

20   that iRhythm monitored its competitors' patents is

21   sufficient to state a claim.

22   The Complaint alleges that, "[u]pon information

23   and belief, iRhythm monitors products and patent filings of

24   its competitors, including Welch Allyn."  But "[a]llegations

25   about monitoring competition generally and about patents not

10:31:48 1  asserted here do not plausibly establish that [a defendant]

10:31:51 2  had knowledge of infringement of the [asserted] patents."

10:31:54 3  Even "having a general policy with respect to thousands of

10:31:57 4  patents in a field of technology does not plausibly

10:32:01 5  establish or imply that [defendant] subjectively believed

10:32:04 6  there was a high probability that its acts constituted

10:32:08 7  infringement of two specific patents."

10:32:15 8          Plaintiff says that since the filing of the

10:32:18 9  Amended Complaint, it has conducted "further investigation,"

10:32:21 10 which, purportedly, has turned up more "evidence" that

10:32:25 11 iRhythm has monitored Welch's patent filings.  If it has,

10:32:26 12 that is of no avail here, since the Court can only consider

10:32:30 13 allegations made in the Complaint at this stage.

10:32:33 14         As to willful blindness, the Complaint makes no

10:32:37 15 specific, non-conclusory allegations of discrete acts

10:32:41 16 undertaken by iRhythm to remain ignorant of the Asserted

10:32:44 17 Patents.  So willful blindness also does not suffice.

10:32:47 18         So really what I was talking about there was

10:32:49 19 pre-complaint filing.

10:32:51 20         As for post-complaint filing, I am not going to

10:32:55 21 address whether the initial complaint provided knowledge of

10:32:57 22 the patents and knowledge of infringement, because it seems

10:33:00 23 undisputed that the Amended Complaint does not contain any

10:33:04 24 allegations that that is the case.

10:33:05 25         So, accordingly, I am going to grant the Motion

10:33:13  1   to Dismiss willfulness from the case without prejudice to

10:33:15  2   bring it back should discovery uncover additional facts that

10:33:18  3   would support willfulness.

10:33:19  4           So that is my ruling on the motion.

10:33:23  5           Is there anything else that we need to address

10:33:26  6   while we are on the phone?

10:33:30  7           MS. MAYER:  Not from defendant, iRhythm, Your

10:33:32  8   Honor.

10:33:33  9           MS. BEANE:  Not from Plaintiff either.  Thank

10:33:36 10   you.

10:33:36 11           THE COURT:  Alright.  Thank you, everyone.  Have

10:33:38 12   a good day.

         13           (Teleconference concluded at 10:33 a.m.)

         14

         15           I hereby certify the foregoing is a true and
              accurate transcript from my stenographic notes in the proceeding.

         16

         17                        /s/ Dale C. Hawkins
                                  Official Court Reporter
         18                         U.S. District Court

         19

         20

         21

         22

         23

         24

         25